Francis Joseph ROELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 1080S394.

Supreme Court of Indiana.

Aug. 10, 1982.

PIVARNIK, Justice.

Defendant-appellant, Francis Joseph Roell, was convicted of Murder, Ind.Code § 35–42–1–1 (Burns Repl.1979), at the conclusion of a jury trial in Marion Superior Court on March 28, 1980. Appellant Roell was sentenced to sixty (60) years imprisonment at the sentencing hearing on April 24, 1980. He now appeals.

Appellant raises two issues on appeal, concerning: 1) whether the trial court erred in refusing to suppress appellant's confession; and 2) whether there was sufficient evidence to convict appellant of Murder.

The evidence most favorable to the State reveals that around midnight on September 23, 1980, the decedent, James Floyd, and the appellant, driving separate cars, approached each other at the intersection of Sherman Drive and Prospect Street in Indianapolis, Indiana. Floyd was irritated because the appellant did not dim his lights when approaching the intersection, and when they met at the intersection, Floyd made some remark about the bright lights to appellant. Appellant reached under his seat and pulled out a sawed-off shotgun and shot Floyd in the head. Floyd died from the resultant wounds.

I

Prior to trial, appellant filed a motion to suppress the videotaped statement given by him to the police. Appellant contends that the State had not proved beyond a reasonable doubt that his statement was voluntary. He claims that the statement was given without the presence of counsel and that he was induced to cooperate and give a statement because his girl friend and her mother were in the station, under arrest, and would be released once he made a statement. Appellant further claims that the police attempted to tell him he would be charged with manslaughter, rather than murder, to encourage him to plead guilty.

The admissibility of a confession is to be determined from the totality of the circumstances. On appeal, we review the question of such admissibility as we do oth-

Michael Riley, Rensselaer, for appellant.

Linley E. Pearson, Atty. Gen., Steven J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

er sufficiency matters. That is, we determine only whether there was substantial probative evidence to support the trial court's findings. In making this determination, we do not reweigh the evidence nor judge the credibility of witnesses. *Lonson v. State*, (1980) Ind., 406 N.E.2d 256, 259; *Ray v. State*, (1979) Ind., 396 N.E.2d 373, 375. We also look to the surrounding circumstances in order to determine whether there was improper influence, such as violence, threats, or promises, used to secure a statement from appellant, *Grey v. State*, (1980) Ind., 404 N.E.2d 1348, 1351; *Nacoff v. State*, (1971) 256 Ind. 97, 101, 267 N.E.2d 165, 167, and the State bears the burden of proving beyond a reasonable doubt that the statement was voluntarily made. *Grey, supra; Magley v. State*, (1975) 263 Ind. 618, 627, 335 N.E.2d 811, 817.

Sergeant Hruban testified at the suppression hearing that he advised Roell of his rights three times prior to the taping of the confession. Among these rights were appellant's right to counsel and the right to stop the questioning at any time. Appellant said in the videotaped statement that he understood all of his rights and voluntarily waived them. He also said that no threats or promises were used to induce him to make a statement. Appellant's confession also reveals that he was not under the influence of any drugs, although at the suppression hearing he stated he had taken PCP prior to the confession and that this had made him mellow. However, the police testified that he was not under the influence of alcohol or drugs and that he did not appear to be disoriented but understood what they were talking to him about and appeared to have control of himself as he talked.

Appellant also stated during the hearing that he requested an attorney before confessing to the crime. This is not substantiated anywhere in the record except for his allegation at the hearing. The police officers were never directly asked whether appellant requested an attorney but they testified that they, on more than one occasion, advised him that he had the right to the presence of counsel and he did not have to

continue the questioning without the counsel. Appellant said he understood all of his rights but wished to go on and tell them about the incident.

Finally, appellant asked the police about the penalties imposed for the crime of murder. Sergeant Hruban read him the statutes pertaining to homicide but informed appellant that the police had no way of knowing what would happen to him as far as the sentencing was concerned.

■ Based on the above evidence it cannot be said that the trial court's ruling was incorrect. It appears appellant was read the *Miranda* rights and warnings on three occasions, including his right to counsel and right to cease talking at any time. Appellant stated he understood those rights and continued to give the statement. All the officers involved stated they did not threaten appellant or mislead him into making the confession. The trial court properly admitted appellant's statement into evidence.

## II

■ Appellant next contends that there was insufficient evidence on his conviction of murder to warrant a finding of guilt beyond a reasonable doubt. He contends that the element of intentional killing of another human being was not proved beyond a reasonable doubt because he could not form the requisite intent since he was intoxicated and under the influence of drugs. Whether or not the appellant had the requisite mental state to commit murder was within the province of the fact-finding authority of the jury and it was for them to interpret it, assess its weight, and give it such credibility as they found in arriving at their verdict. *Oricks v. State*, (1978) 268 Ind. 680, 377 N.E.2d 1376; *Shackelford v. State*, (1976) 264 Ind. 698, 349 N.E.2d 150.

■ All of the evidence presented to the jury, except appellant's own testimony, showed that he was not intoxicated or under the influence of drugs and seemed to be in control of his conduct. He made these

statements to the police after his arrest and during the time his statement was being given, the police officers testified that he appeared to them to be in control of his faculties and did not appear to be intoxicated or under the influence of drugs. Marlene Palmer, a passenger in appellant's automobile at the time of the shooting, was asked by defense counsel whether the appellant was intoxicated or drugged. She answered: "He seemed like he was handling ·hisself (sic) all right." Earlier she told the prosecution that appellant was not drunk. The witnesses testified that he drove the automobile in a normal manner, although appellant's girlfriend said the car was weaving slightly, observed stop lights and stop signs, and had discussions with them before and after the incident that indicated he was in control of his faculties. There was ample evidence presented to the jury from which they could properly find beyond a reasonable doubt that appellant had committed the crime of murder and that he did so knowingly and intentionally.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.