## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 20 2015, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Aguila Antwon Binion,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

March 20, 2015

Court of Appeals Case No.
71A03-1407-CR-245

Appeal from the St. Joseph Superior Court
Honorable Jerome Frese, Judge
Cause No. 71D03-1112-FB-206

**Friedlander, Judge.**

[1] Aguila Antwon Binion appeals his conviction for Burglary, as a class B felony.[1] He presents the following consolidated and restated issues for review:

1. Is the conviction supported by sufficient evidence?

2. Did the trial court abuse its discretion in rejecting Binion's plea to a reduced charge?

3. Was Binion denied a fair and impartial trial due to misconduct of the trial court?

4. Did the trial court err when it refused Binion's request to disqualify a deputy prosecutor?

We affirm.

[2] During a home invasion around 6:00 p.m. on November 28, 2011, Andre Harris was robbed and beaten in his apartment.[2] His multiple assailants took his cell phone, house and car keys, and cash. Thereafter, Harris stumbled across the street to his friend Hayah Binion's home. Hayah assisted Harris until emergency responders arrived. Harris was transported to the hospital.

[3] Around 11:00 p.m., Harris called Hayah and, during the conversation, indicated that he would be staying at his mother's home that night because his

---

[1] The statute in effect at the time of the offense classified burglary of a dwelling as a class B felony. Ind. Code Ann. § 35-43-2-1(1)(B)(i) (West, Westlaw 2013). The statute has since been revised and in its current form reclassifies this as a Level 4 felony. *See* I.C. § 35-43-2-1(1) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The former version is applicable in this case because the offense was committed before July 1, 2014. *See id.*

[2] Harris lived in a home that had been converted into three apartments. The entry to his second-floor apartment was on the main level on the side of the house, though facing the street. The entrances for the other two apartments were in the rear and the front of the house.

attackers still had the keys to his apartment. Binion, Hayah's husband, was next to Hayah during the call and heard much of the conversation. Though close friends with Hayah, Harris knew Binion only socially.

[4] The following morning around 5:00 a.m., South Bend police officers were dispatched to Harris's residence on the report of a burglary in progress. Responding officers detained Marcus Gregory, who was at the back of the house outside Rhonda Nicks's apartment. Officers drew their weapons and yelled repeatedly for Gregory to freeze and put his hands up.

[5] Within one or two minutes of Gregory's detention, another officer came around the front of the house and observed Binion exiting Harris's apartment. Binion was shutting the door with a sock on his right hand and wiping the knob. The officer immediately detained Binion, who was in possession of a crowbar. Binion also had several items in his pocket that belonged to Harris, including a game controller, an ear piece, a battery, and a watch. Binion removed these items from Harris's apartment without permission.

[6] Binion and Gregory were transported to the police station. Gregory, who was not found in possession of any of Harris's property and was apparently at the scene to visit Nicks, was eventually released. Binion was arrested and charged with burglary as a class B felony.

[7] After Binion fired two different attorneys, he chose to proceed pro se. On May 6, 2013, a jury was selected but not yet sworn. The following day, Binion accepted a plea offer in which he would plead guilty to a burglary as a class C

felony. At the plea hearing, Binion prefaced his admission of the factual basis with "I'm really not telling the truth." *Transcript* at 152. The trial court took the plea under advisement. After delays relating to evaluation and preparation for community corrections, the parties appeared for sentencing on November 6, 2013. Binion interjected at the beginning of the hearing that he would like transcripts "for everything up to this point." *Id*. at 172. After some discussion, the court asked: "You think that you weren't treated fairly?" *Id*. at 174. Binion replied, "I know I wasn't treated fairly." *Id*. The court then rejected the plea and set the cause for jury trial.

[8] The jury trial commenced June 9, 2014. Binion represented himself at trial with the assistance of standby counsel. After the State presented its evidence, Binion called three witnesses and testified in his own defense. Binion explained that he noticed, from across the street, Harris's door open and a shadow present. He said he quickly dressed, grabbed a crowbar for a weapon, and put a sock on his right hand to protect his hand from blood. According to Binion, he crept up to Harris's door and entered when he heard nothing. Binion then described having a "brain fart" and picking up some of Harris's property. *Id*. at 574. When he heard the police stopping Gregory outside the back of the house, he put the items in his pocket and ran toward the door. Binion indicated that he was rushing out to aid the police. Finally, Binion denied wiping the doorknob, explaining that it just looked that way because it is difficult to twist a knob with a slippery cotton sock on your hand.

[9] The jury found Binion guilty as charged, and the trial court subsequently sentenced him to twelve years, with six years suspended and the remainder to be served in community corrections. Binion now appeals. Additional facts will be provided below as needed.

## 1.

[10] Binion initially challenges the sufficiency of the evidence. In this regard, he relies exclusively on his own testimony. He claims that he went into the apartment to confront an intruder and that he had no intent to take Harris's property. Binion urges that his explanation was reasonable.

[11] Our standard of review is well settled. We neither reweigh the evidence nor judge the credibility of witnesses. *Jackson v. State,* 925 N.E.2d 369 (Ind. 2010). Rather, we consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Alvies v. State,* 905 N.E.2d 57 (Ind. Ct. App. 2009).

[12] We reject Binion's bald invitation to reweigh the evidence and judge his credibility. As set out in detail above, ample evidence supports the conviction. The jury was free to reject Binion's self-serving and unpersuasive testimony in which he attempted to explain away the State's evidence. *See Scott v. State*, 867 N.E.2d 690, 696 (Ind. Ct. App. 2007) ("[t]he trier of fact is entitled to determine which version of the incident to credit"), *trans. denied*.

## 2.

[13]     Binion asserts that the trial court abused its discretion when it rejected the plea agreement. In his brief argument, Binion acknowledges that a trial court is not required to provide reasons for rejecting a plea agreement. *See Meadows v. State*, 428 N.E.2d 1232, 1235 (Ind. 1981) ("when the court, after complying strictly with the guilty plea statutes, and after taking evidence on the factual basis for the plea, rejects a plea bargain, we will presume that he court has properly evaluated the propriety of accepting it"). Binion appears to argue, however, that where a plea is voluntary and supported by a sufficient factual basis, the trial court may reject the plea agreement *only* when the defendant attempts to contemporaneously maintain his innocence. Binion cites no authority in support of his undeveloped argument, and we are aware of none.

[14]     Our Supreme Court has held that a defendant has no absolute right to acceptance of a plea agreement. *Meadows v. State*, 428 N.E.2d 1232. A trial court "may reject a plea in the exercise of its sound judicial discretion." *Id*. at 1235.

[15]     Here, Binion's plea was taken under advisement after a plea hearing at which the voluntariness of the plea and a factual basis were established. After six months, during which arrangements were being made regarding community corrections, Binion appeared for sentencing and indicated that he had not been treated fairly. He requested transcripts of all prior proceedings in order to prove his contention. Accordingly, the trial court rejected the plea agreement and reset the case for trial by jury. Binion has failed to establish that the trial court abused its discretion.

3.

Binion claims that he was denied a fair and impartial trial due to misconduct of the trial court. In this regard, he notes that the trial court "interjected itself on approximately 37 occasions during the trial" and had an ex parte communication with the jury regarding scheduling.[3] Appellant's Brief at 6. With respect to the interjections, Binion expressly (though tersely) addresses only two and then provides a long list of pages where others occurred.

The proper procedure to preserve such error for appeal is to object to the trial court's interruptions or misconduct, request an admonishment, and move for a mistrial. *See Davis v. Garrett*, 887 N.E.2d 942 (Ind. Ct. App. 2008), *trans. denied*. As Binion did not preserve the claims of error, they are waived unless he establishes fundamental error. *Id*. Binion, however, has not presented us with a fundamental error argument. "Simply asserting that error occurred and was harmful is insufficient to establish fundamental error." *Hollingsworth v. State*, 987 N.E.2d 1096, 1099 (Ind. Ct. App. 2013), *trans. denied*. Review for fundamental error is therefore waived.

4.

---

[3] During a brief recess, the jury inquired of the trial court how late the trial would go, and the court gave the jury some general information. After the recess and on the record, the trial court made the parties fully aware of its communication with the jury. Binion did not object.

[18] Finally, Binion argues that the trial court erred in refusing to disqualify Deputy Prosecutor A.J. Ennis from participating in the trial. The entirety of Binion's argument is that he served Ennis with a subpoena,[4] which disqualified Ennis pursuant to Indiana Professional Conduct Rule 3.7.

[19] Prof. Cond. R. 3.7(a) provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

More is required to disqualify a lawyer than the simple issuance of a subpoena. *See Rhodes v. Miller*, 437 N.E.2d 978, 982 (Ind. 1982) ("defendant cannot disqualify a prosecuting attorney by naming him as a witness"). *See also Wilcoxen v. State*, 619 N.E.2d 574, 576 (Ind. 1993) ("[t]o be disqualified to act as an advocate in a case, it must be shown that the attorney would be a necessary witness for one of the parties and that his testimony would be significantly useful to that party").

[20] Binion makes no attempt to establish on appeal that Ennis was a necessary witness in this case. The trial court provided Binion with an opportunity to

---

[4] Binion claimed that immediately prior to Hayah being deposed by the defense, Ennis spoke with her and coerced her to change her testimony. At trial, however, Hayah testified that although she privately spoke with Ennis at the deposition, the discussion did not change the substance of her deposition testimony.

make such a showing, but Binion failed to call any witnesses at the pre-trial hearing specifically scheduled to address this matter. Further, Binion did not call Ennis as a witness at trial. Under the circumstances, the trial court did not err in refusing to disqualify Ennis.[5]

[21] Judgment affirmed.

Kirsch, J., and Crone, J., concur.

---

[5] As a precaution, the trial court ordered the participation of a second deputy prosecutor and directed Ennis to refrain from participating in the questioning of Hayah.